KRISTEN CLARKE, Assistant Attorney General
SAMEENA SHINA MAJEED, Chief
LUCY G. CARLSON, Deputy Chief
ABIGAIL B. MARSHAK, Trial Attorney (NYRN 5350053)
CARRIE PAGNUCCO, Trial Attorney (NYRN 4774790)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
abigail.marshak@usdoj.gov
carrie.pagnucco@usdoj.gov

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
DAVID M. DEVITO (CABN 243695)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7332
FAX: (415) 436-6748
david.devito@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TENISHA TATE-AUSTIN; PAUL AUSTIN; and FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>JANETTE C. MILLER; MILLER AND PEROTTI REAL ESTATE APPRAISALS, INC.; AMC LINKS LLC,<br><br>Defendants. | CASE NO. 3:21-cv-09319-MMC<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES**<br><br>Date: March 25, 2022<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19th Floor<br><br>Hon. Maxine M. Chesney |

The United States has a strong interest in eradicating housing discrimination, which includes ensuring the correct interpretation and application of the Fair Housing Act ("FHA" or "Act"), 42 U.S.C. §§ 3601 *et seq.*, with respect to appraisal-related claims.

In 2020, Plaintiffs Tenisha Tate-Austin and Paul Austin, a Black couple, sought to refinance their home mortgage. Defendant Janette Miller, a licensed appraiser, visited their home and determined a value of $995,000. But a few weeks later, another appraiser set the home's value at $1,482,500 – nearly $500,000 more. Plaintiffs allege that Defendant Miller's consideration of race motivated her low valuation, in violation of federal and state law, including the Fair Housing Act. Currently pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted ("Motion" or "Motion to Dismiss"). (ECF No. 19.)

The United States respectfully submits this statement under 28 U.S.C. § 517[1] to provide an overview of the FHA and to address two questions of law raised in Defendants' Motion.[2] First, Defendants assert that the FHA does not apply to residential appraisers. (Mot. at 13-14.) The statute's text and caselaw make clear that it does. Second, Defendants lay out the elements of a prima facie case and argue that Plaintiffs have failed to allege these elements. (Mot. at 6-9, 11-13.) But Plaintiffs need not allege facts that make out a prima facie case at this stage. The Act simply requires that Plaintiffs allege a plausible entitlement to relief as a result of Defendants' "discriminatory housing practices."

## I. <u>INTEREST OF THE UNITED STATES</u>

The Department of Justice and the Department of Housing and Urban Development ("HUD") share enforcement authority under the FHA. *See* 42 U.S.C. §§ 3610; 3612(a), (b), (o); 3613(e); 3614. That enforcement authority includes addressing appraisal discrimination. *See, e.g.*, *United States v. Am. Inst. of Real Est. Appraisers of the Nat'l Ass'n of Realtors (AIREA)*, 442 F. Supp. 1072, 1076 (N.D. Ill. 1977) (describing the United States' complaint against four trade associations for promulgating appraisal standards that caused "appraisers and lenders to treat race and national origin as a negative factor in determining the value of dwellings," in violation of 42 U.S.C. §§ 3604(a), 3605, and 3617).

Combatting housing discrimination, including bias in appraisals, is a high priority across the

[1] Under 28 U.S.C. § 517 "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." *See Wortman v. All Nippon Airways*, 854 F.3d 606, 617 (9th Cir. 2017) ("Pursuant to 28 U.S.C. § 517, the United States may submit a statement in a case expressing its views on relevant issues in which it has an interest.").

[2] The United States does not take a position on any other issues not addressed in this Statement, including the application of the law to the facts of this case.

federal government. Last year, the President ordered agencies to take "a comprehensive approach to advancing equity for all, including people of color and others who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality." Exec. Order No. 13,985, 86 Fed. Reg. 7,009 (Jan. 25, 2021). He directed the federal government to address "[o]ngoing legacies of residential segregation and discrimination" – including "a persistent undervaluation of properties owned by families of color." 86 Fed. Reg. 7,487 (Jan. 29, 2021). And he instructed that the federal government should "work with communities to end housing discrimination, to provide redress to those who have experienced housing discrimination, [and] to eliminate racial bias and other forms of discrimination in all stages of home-buying and renting." *Id.* To facilitate these goals the President established an interagency task force to utilize the federal government's "many levers . . . including potential enforcement under fair housing laws . . . to root out discrimination in the appraisal and homebuying process." White House Fact-Sheet, available at https://perma.cc/CAE5-L6AL; *see also* Interagency Task Force on Property Appraisal and Valuation Equity, https://pave.hud.gov.

## II. ARGUMENT

### A. Overview of the FHA's Broad Purpose and Remedial Intent

"[T]he Fair Housing Act of 1968 . . . broadly prohibits discrimination in housing throughout the Nation." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979); *see* 42 U.S.C. § 3601 ("It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."). Congress passed the Act in the wake of Dr. Martin Luther King's assassination to combat both "open and covert racial discrimination that prevented black families from obtaining better housing and moving to integrated communities[.]" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 529-30 (2015) (internal citations omitted). With its lasting power to address discrimination, the FHA "is one of the most important pieces of legislation to be enacted by the Congress in the past 60 years. It strikes at the heart of the persistent racism that so deeply troubles our Nation." *Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 496 (9th Cir. 2016).

The FHA prohibits housing discrimination on the basis of race, color, religion, sex, familial status, disability, and national origin. 42 U.S.C. §§ 3604, 3605, 3606, 3617. As alleged in Plaintiffs' complaint, the FHA makes it unlawful to:

- "refuse to sell or rent . . . or otherwise make unavailable" housing based on race, *id.* § 3604(a);
- "make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination" based on race, *id.* § 3604(c);
- "discriminate against any person in making available [residential real estate-related transactions], or in the terms or conditions of such a transaction, because of race," including "[t]he selling, brokering, or appraising of residential real property," *id.* § 3605(a), (b)(2);[3] and
- "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" rights protected by the FHA, *id.* § 3617.

These provisions encompass a broad range of acts. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (*quoting Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)) ("The Supreme Court has instructed that we are to treat '[t]he language of the [FHA as] broad and inclusive.'").

### B. <u>The FHA Applies to Residential Appraisals and Appraisers</u>

The statutory text and caselaw make clear that the Fair Housing Act – including those claims raised in the Plaintiffs' complaint – applies to appraisers and appraisals.

#### i. <u>The Act's Text Illustrates Its Application to Appraisers and Appraisals</u>

First, by its plain terms, the Act directly prohibits discrimination by "any person or other entity" engaged in the "apprais[al] of residential real property." 42 U.S.C. § 3605(a) and (b)(2). Consistent with the FHA's statutory text, HUD's regulations state that "[i]t shall be unlawful for any person or other entity whose business includes engaging in the . . . appraising of residential real property to discriminate against any person in making available such services, or in the performance of such services because of race [or other FHA-protected categories]." 24 C.F.R. § 100.135(a); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (deferring to HUD's interpretation of the FHA as the "the federal agency primarily assigned to implement and administer" the statute). HUD's regulations define an appraisal as "an estimate or opinion of the value of a specified residential real property made in a business context in connection with the sale, rental, financing or refinancing of a dwelling or in connection with any activity that otherwise affects the availability of a residential real estate-related transaction[.]" 24 C.F.R.

---

[3] The FHA also defines "residential real estate-related transactions" to include "the making or purchasing of loans . . . secured by residential real estate," which would include both mortgages and refinances of such loans. 42 U.S.C. § 3605(b)(1).

§ 100.135(b). Appraisers, by definition, engage in "appraising of residential real property," and may be liable under § 3605.

Second, § 3605(c)'s "Appraisal Exemption" underscores the FHA's broad applicability to appraisers and appraisals, including to claims brought under § 3604 and § 3617. The exemption states that "[n]othing in this subchapter prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, color, religion, national origin, sex, handicap, or familial status." 42 U.S.C. § 3605(c). When Congress added § 3605(c) in 1988, the House Judiciary Committee explained that "[t]his section clarifies that appraisers may take into consideration relevant and nondiscriminatory factors when making appraisals. Thus, it is intended that the appraisal process not operate to discriminate on the basis of [protected classes]." H.R. Rep. No. 100-711, at 31 (1988) *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2192.

The exemption clearly contemplates appraisers' liability as persons "engaged in the business of furnishing appraisals." 42 U.S.C. § 3605(c). And though it is located within § 3605, the exemption applies to "this subchapter" – Subchapter I – which includes §§ 3601-3619. Appraiser liability is therefore anticipated under all of the FHA provisions underlying Plaintiffs' claims. If the FHA did not apply broadly to appraisers and appraisals, the exemption's application to other sections would be superfluous. Otherwise stated, there would be no need to exempt appraisers from liability in certain circumstances unless they could face liability in the first place. *Cf. Inclusive Communities*, 576 U.S. at 537-38 (*citing Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995)) ("[T]he Court will avoid a reading which renders some words altogether redundant"). As a result, the Act's provisions, including § 3604, § 3605, and § 3617, all apply to appraisals and appraisers.

Finally, in their Motion, Defendants raise § 3603, titled "effective dates of certain prohibitions," to argue that the FHA does not apply to the subject property. (Mot. at 10-11.) Defendants' reading of the statute is plain error. Defendants quote four categories of dwellings listed in § 3603(a)(1) as covered by the Act, but that section was effective only until December 31, 1968. 42 U.S.C. § 3603(a)(1)-(2). After that date all dwellings are covered by the FHA unless specifically exempted in § 3603(b). *Id.*

§ 3603(a)(2). The exemption in § 3603(b) does not apply here because it can only be raised by a dwelling's *owners*. *See Singleton v. Gendason*, 545 F.2d 1224, 1226 & n.3 (9th Cir. 1976) (holding that the "exemption is only available to owners"); *United States v. Hylton*, 944 F. Supp. 2d 176, 192 (D. Conn. 2013) (same). Nothing in § 3603 bars Plaintiffs' claims of discrimination against an appraiser.

ii. Caselaw Supports the Act's Application to Appraisers and Appraisals

Caselaw interpreting liability under the Fair Housing Act additionally supports its application to appraisers. The Act "focuses on prohibited acts," *Meyer v. Holley*, 537 U.S. 280, 285 (2003), not actors. This means that a person – irrespective of position or occupation – may be liable for his or her own acts that violate the FHA. *See, e.g.*, 24 C.F.R. § 100.7(a)(1) ("A person is directly liable for . . . [t]he person's own conduct that results in a discriminatory housing practice."). Courts have accordingly interpreted the Act to apply to a range of persons and entities, including appraisers. *AIREA*, 442 F. Supp. at 1078-79 (collecting cases explaining the variety of conduct prohibited by the Act, and holding that "the Fair Housing Act does apply to appraisers of real estate"). In holding that the Act applies to appraisers, the court in *AIREA* explained that "[i]t is clear from the plain language of [§§ 3604(a) and 3617] that appraisers are not exempted from their coverage" because "both sections are unrestricted with respect to the class of persons subject to their prohibition." *Id.* at 1079. The same logic applies to those other FHA provisions that are similarly "unrestricted" because they focus on prohibited acts rather than actors, including, §§ 3604(a)-(f) and 3617. Consistent with this logic, courts have found that proper defendants for appraisal-related discrimination may include not only appraisers, but their employers and the lenders who relied on their valuations. *See, e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010) (reversing dismissal of § 3605 claim against lender, appraiser, and appraiser's employer); *Barkley v. Olympia Mortg. Co.*, No. 04 CV 875 RJD/KAM, 2007 WL 2437810, at *15, *21 (E.D.N.Y. Aug. 22, 2007) (allowing reverse-redlining claim under §§ 3604(b) and 3605 to proceed against an appraiser, developers, mortgage lenders, lawyers, and other appraisers who allegedly overvalued homes).[4]

[4] Where courts dismissed appraisal claims, they did so because the facts alleged or developed were insufficient, not because FHA suits cannot be founded on discriminatory appraisals as a general matter. *See, e.g.*, *Latimore v. Citibank*, 979 F. Supp. 662, 665-67 (N.D. Ill. 1997); *Thomas v. First Fed. Sav. Bank,* 653 F. Supp. 1330, 1338-41 (N.D. Ind. 1987); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1387-89 (5th Cir. 1986); *Price v. Taylor*, No. 3:08CV420, 2011 WL 3843863, at *4 (N.D. Ohio Aug. 30, 2011), *on reconsideration*, No. 3:08CV420, 2012 WL 345917 (N.D. Ohio Jan. 27, 2012).

Finally, recognizing liability for appraisers accords with the FHA's central purpose "to eradicate discriminatory practices within a sector of our Nation's economy." *Inclusive Communities*, 576 U.S. at 539. The Act's broad, remedial language and purpose has prompted Courts to interpret the law's applicability and scope expansively. *See, e.g.*, *id.* at 545-46 (holding that disparate-impact claims are cognizable under the FHA based on, among other factors, the Act's statutory purpose); *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1303 (2017) (detailing the Court's historical decisions conferring broad standing under the FHA); *Walker*, 272 F.3d at 1129-31 (reversing summary judgment on FHA claim and referencing the Act's "broad and inclusive" scope). Consistent with this purpose, the Court should adopt the view that the FHA is applicable to appraisers and appraisals.

### C. To State a Claim for Relief, Plaintiffs Need Only Plausibly Allege that Defendants' Conduct Constituted a Discriminatory Housing Practice

In considering the present motion, the Court evaluates whether Plaintiffs have pled sufficient facts to demonstrate a plausible entitlement to relief under the FHA. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). Specifically, the Court determines whether Plaintiffs' allegations, if proved, would demonstrate that Defendants' home appraisal constituted a "discriminatory housing practice" under the FHA. *See* 42 U.S.C. § 3602(i), (f). Contrary to Defendants' arguments, Mot. at 12-13, Plaintiffs do not need to plead a prima facie case to survive Defendants' motion.

The Ninth Circuit has made clear that at the motion to dismiss stage, "the vitality of a fair housing complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997). Those statutory elements are whether (1) an "aggrieved person" (2) has been subjected to "an alleged discriminatory housing practice." *Id.* (quoting 42 U.S.C. § 3613(a)(1)(A)). As defined by the Act, an "aggrieved person" is "any person who . . . claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). A "discriminatory housing practice," in turn, is "an act that is unlawful under section 3604, 3605, 3606, or 3617 of [the Act]." *Id.* § 3602(f). Thus, to state a claim under the FHA, Plaintiffs need only plausibly allege that they have been subject to an act that is unlawful under the FHA. For example, in *Swanson v. Citibank, N.A.*, the Seventh Circuit held that the plaintiff had "pleaded enough [under the FHA] to survive a motion under Rule 12(b)(6)" to dismiss her § 3605 claim

because the "appraisal defendants knew her race" and her complaint "accuse[d] them of discriminating against her in the specific business transaction that they had with her." 614 F.3d at 406.

And even if Rule 12(b)(6) required plaintiffs to establish a prima facie case, the Court's evaluation of whether Plaintiffs have met the pleading standard under the Act must be "adapted to [the] situation." *Harris*, 183 F.3d at 1051 (stating that the prima facie case must merely demonstrate that "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury"); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 n.13 (10th Cir. 1995) ("The prima facie case is a flexible standard that may be modified to relate to different factual situations."). This flexibility in determining the appropriate prima facie framework applies with particular force to cases involving appraisal discrimination, which often do not neatly fit within the typical prima facie framework. *See Steptoe v. Sav. of Am.*, 800 F. Supp. 1542, 1546 (N.D. Ohio 1992) (explaining that rigid application of prima facie criteria could permit a potential defendant in an appraisal case to "always insulate itself from liability").

Moreover, allegations sufficient to state a claim need not include direct evidence of discrimination; well-established FHA precedent permits plaintiffs to plead and prove discrimination with circumstantial evidence. *See, e.g.*, *Ave. 6E Invs.*, 818 F.3d at 504 ("[A] plaintiff must 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely that not motivated' the defendant and that the defendant's actions adversely affected the plaintiff in some way."); *see also Price v. Taylor*, No. 3:08CV420, 2011 WL 3843863, at *4 (N.D. Ohio Aug. 30, 2011), *on reconsideration*, No. 3:08CV420, 2012 WL 345917 (N.D. Ohio Jan. 27, 2012) (*citing Lindsay v. Yates*, 578 F.3d 407, 414-15 (6th Cir. 2009)) (explaining that to prevail on summary judgment in an FHA appraisal case, the plaintiff may present either direct "or circumstantial evidence from which discrimination can be inferred").

Defendants seek to impose a high pleading standard on Plaintiffs' FHA claims that Ninth Circuit caselaw directly refutes. To survive Defendants' Motion to Dismiss, Plaintiffs need only plausibly allege that Defendants discriminated in conducting the home appraisal because of the Plaintiff homeowners' race.

## III. CONCLUSION

"Today, the policy to provide fair housing nationwide announced in the FHA remains as important as ever." *Ave. 6E Invs.*, 818 F.3d at 503. For the foregoing reasons, the Court should hold that the FHA applies to discriminatory appraisals, and individual appraisers and related entities may be held liable for such discrimination. The Court should also find that the FHA requires only that Plaintiffs plausibly allege a "discriminatory housing practice" that entitles Plaintiffs to relief. Accordingly, the United States respectfully requests consideration of this Statement of Interest, and welcomes the opportunity to provide further assistance at the Court's request.

Dated: February 14, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ David M. DeVito*
DAVID M. DEVITO
Assistant United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

LUCY G. CARLSON
Deputy Chief

*/s/ Abigail B. Marshak*
ABIGAIL B. MARSHAK
CARRIE PAGNUCCO
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice

Attorneys for the United States of America

## ATTESTATION PURSUANT TO LOCAL CIVIL RULE 5-1(i)(3)

I, Abigail B. Marshak, attest that any signatories indicated by a conformed signature (/s/) within this e-filed document have approved, and concur in, this filing. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Abigail B. Marshak*
ABIGAIL B. MARSHAK