IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TENISHA TATE-AUSTIN, et al., | Case No. 21-cv-09319-MMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MILLER DEFENDANTS' MOTION TO DISMISS; AFFORDING PLAINTIFFS LEAVE TO AMEND** |
| JANETTE C. MILLER, et al., | |
| Defendants. | |

Before the Court is defendants Miller and Perotti Real Estate Appraisals, Inc. ("MPREA") and Janette C. Miller's ("Miller") (collectively, "Miller Defendants") Motion, filed January 14, 2022, to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, each of the claims asserted against them in plaintiffs Tenisha Tate-Austin, Paul Austin (collectively, the "Austins"), and Fair Housing Advocates of Northern California's ("FHANC") complaint.[1]  Plaintiffs have filed opposition, to which the Miller Defendants have replied.[2]  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[3]

**BACKGROUND[4]**

FHANC is "a non-profit corporation dedicated to promoting equal housing

---

[1] On January 7, 2022, defendant AMC Links LLC ("AMC Links") filed an answer to the complaint.

[2] On February 14, 2022, the Attorney General filed a "Statement of Interest" on behalf of the United States, and on February 21, 2022, plaintiffs filed a "Statement of Recent Authority."  The Miller Defendants have not filed a response to either document.

[3] By order filed March 22, 2022, the Court took the matter under submission.

[4] The following facts are taken from allegations in the complaint.

United States District Court
Northern District of California

opportunity . . . through community education, government advocacy, and counseling."
(See Compl. ¶ 9.)  The Austins are "an African American couple" who own a house in
Marin City, California (hereinafter, the "Pacheco Street House") (see Compl. ¶ 1), "an
unincorporated community located in Marin County, situated between the cities of
Sausalito to the south and Mill Valley to the north" (see Compl. ¶ 14).  Marin City is one
of two census tracts in which the majority of Marin County's African American residents
are concentrated (see Compl. ¶¶ 15, 18); Sausalito, by contrast, is predominantly white
(see Compl. ¶ 19).[5]

In December 2016, the month in which the Austins purchased and financed the
Pacheco Street House, it was appraised at an estimated market value of $575,500.  (See
Compl. ¶ 40.)  In May 2018, after "completely remodel[ing]" the house, the Austins
refinanced their mortgage based on an appraisal that estimated the house's value to be
$864,000, and in March 2019, after making further renovations, the Austins again
refinanced their mortgage, this time based on an appraisal that valued the house at
$1,450,000.  (See Compl. ¶¶ 41-45.)

In 2020, the Austins sought to refinance their mortgage for a third time, in order "to
take advantage of historically low interest rates and obtain additional funding to complete
[a] basement conversion" as well as construction of an "accessory dwelling unit."  (See
Compl. ¶ 46.)  In connection therewith, they contacted their mortgage broker, who
retained the services of an appraisal management company, AMC Links, which company
then hired the Miller Defendants to conduct an appraisal of the Pacheco Street House.
(See id.)

In January 2020, Miller conducted an inspection of the Pacheco Street House.
(See Compl. ¶¶ 47.)  During the inspection, plaintiff Paul Austin "was present" and
"introduced himself by name"; additionally, "photos of the Austins and their minor

---

[5] In 2019, African Americans accounted for approximately 35.95% and 0.9% of the
populations of Marin City and Sausalito, respectively.  (See Compl. ¶¶ 18-19.)

2

children, all of whom are African American," as well as "African-themed" art, were "conspicuous[ly]" on display.  (See Compl. ¶¶ 49-51.)  On February 12, 2020, AMC Links issued an appraisal report, in which Miller concluded the market value of the house was $995,000.  (See Compl. ¶ 53.)

The Austins, "shocked" by Miller's appraisal report, were informed by their mortgage broker that they "could not obtain refinancing at favorable terms because of the . . . low value ascribed to the Pacheco Street House" and, in February 2020, the Austins requested AMC Links provide a second appraisal and by a different appraiser. (See Compl. ¶¶ 68-69.)  Prior to the next appraisal inspection, the Austins asked "a friend, who is white, to be present" and to "greet the appraiser as if she [were] the homeowner."  (See Compl. ¶ 69.)  In addition, the Austins replaced their family photos and African-themed art with photos depicting their friend's "white family."  (See Compl. ¶ 70.)  On the day of the inspection, the friend "answered the door . . . and sat in the dining area"; neither of the Austins was present. (See Compl. ¶ 71.)  On March 8, 2020, the appraiser issued a report in which the value of the Pacheco Street House was estimated at $1,482,500 (see Compl. ¶ 72), and, based thereon, "the Austins refinanced their mortgage" on terms that were less "favorable" than the "terms that had been available one month before" (see Compl. ¶ 77).

Based on the above allegations, plaintiffs assert seven claims for relief against the Miller Defendants, specifically, six claims alleging violations of, respectively, (1) the "Fair Housing Act, 42 U.S.C.§ 3601 et seq." ("FHA"), (2) "California['s] Fair Employment and Housing Act, Cal. Gov't Code §§ 12927, 12955 et seq." ("FEHA"), (3) the "Civil Rights Act of 1866, 42 U.S.C. § 1981," (4) the "Civil Rights Act of 1866, 42 U.S.C. § 1982," (5) California's "Unruh Civil Rights Act, Cal. Gov't Code § 51 et. seq." ("Unruh Act"), and (6) California's "Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq." ("UCL"), as well as one claim alleging (7) "Negligent Misrepresentation, Cal. Civil Code § 1710."

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

In the instant motion, the Miller Defendants seek dismissal of each of the claims asserted against them in plaintiffs' complaint.

**I.     First Claim for Relief (FHA)**

In the First Claim for Relief, plaintiffs allege the Miller Defendants have violated §§ 3604, 3605, and 3617 of the FHA.

To state a claim under the FHA, a plaintiff must allege he is (1) an "aggrieved person" who (2) has been "subjected to an alleged discriminatory housing practice."  See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 250 (9th Cir. 1997) (quoting 42 U.S.C.

1   § 3613(a)(1)(A)).  "A plaintiff can establish a FHA discrimination claim under a theory of

2   disparate treatment or disparate impact."  See Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th

3   Cir. 1999); see also Thomas v. S.F. Hous. Auth., Case No. 3:16-cv-03819-CRB, 2017

4   WL 878064, at *4 (N.D. Cal. Mar. 6, 2017) (noting plaintiff must plead "general disparate

5   impact or disparate treatment elements to make [FHA] claim facially plausible (internal

6   quotation, citation, and alteration omitted)).

7       **A.**    **Applicability of FHA**

8         At the outset, the Miller Defendants contend the FHA does not apply to the instant

9   action for the following three asserted reasons: (1) the FHA applies only to "the sale or

10   rental of real property"; (2) the Pacheco Street House does not fall under any of the four

11   categories of "dwellings" enumerated in § 3603(a)(1); and (3) the Pacheco Street House

12   is exempt from the FHA under § 3603(b).  As set forth below, the Court finds each such

13   argument unpersuasive.

14         First, as discussed in further detail below, although some sections of the FHA refer

15   to the "sale or rental of real property," see, e.g., 42 U.S.C. § 3604, other sections, such

16   as § 3605, also expressly apply to other "real estate-related transactions," see id.

17   § 3605(a), including the "appraising of residential real property," see id. § 3605(b)(2), "in

18   connection with the . . . financing or refinancing of a dwelling," see 24 C.F.R.

19   § 100.135(b).

20         Next, although § 3603(a)(1) restricts the application of the FHA to the four

21   categories of dwellings listed therein, said subsection was effective only until December

22   31, 1968, after which date the statute was amended to apply to "all dwellings . . . except

23   as exempted by [§ 3603(b)]."  See id. § 3603(a)(2).

24         Lastly, § 3603(b) exempts only single-family houses that are "sold or rented by an

25   owner," see id. § 3603(b), and, as the Miller Defendants themselves repeatedly point out,

26   the instant action involves neither a sale nor rental (see Compl. ¶¶ 44, 46 (alleging the

27   Austins "sought to refinance their mortgage . . . and obtain additional funding" for

28

United States District Court
Northern District of California

renovations)).[6]

Having determined that the FHA applies to the instant action, the Court next addresses whether plaintiffs have sufficiently stated an FHA claim.

### B.        Disparate Treatment or Impact

As noted, a "plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact."  See Harris, 183 F.3d at 1051.  Here, plaintiffs' FHA claim is premised on both such theories.  The Court first addresses the sufficiency of plaintiffs' allegations with respect to disparate treatment.

To state a claim for disparate treatment, a plaintiff must allege the defendant "acted with discriminatory intent."  See Cabrera v. Alvarez, 977 F. Supp. 2d 969, 976 (N.D. Cal. 2013).  A plaintiff need not, however, "prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a motivating factor." See Ave. 6E Invs., LLC v. City of Yuma, Ariz., 818 F.3d 493, 504 (9th Cir. 2016) (internal quotation and citation omitted).  Further, discriminatory intent may be shown by either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way."  See Pac. Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1158 (9th Cir. 2013) (internal quotation and citation omitted).  "[V]ery little" evidence of discriminatory intent is required "to raise a genuine issue of fact," and "any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder."  See id. (internal quotation and citation omitted).

Here, plaintiffs allege, inter alia, that (1) Miller knew the Austins were African American when she conducted her appraisal of the Pacheco Street House (see Compl. ¶ 48), (2) three of the six comparable sales ("comps") selected by Miller were located in Marin City, two of which "were not comparable to the Pacheco Street House in any way

---

[6] Further, as plaintiffs point out, § 3603(b) does not apply to FHA claims brought under §§ 3604(c), 3605, or 3617.  See 42 U.S.C. § 3603(b).

except for their location in Marin City" (see Compl. ¶ 59 (describing one comp as a "bank-owned property that sold in foreclosure . . . two years before," and the other as "an attached dwelling that was contained within a planned unit development")),[7] (3) Miller made "downward adjustments" to the remaining three comps, one of which was located in Sausalito and the other two in Mill Valley, ultimately concluding that the Pacheco Street House "was worth nearly 28% less per square foot than the price per square foot of the allegedly comparable properties" located in surrounding areas that were predominantly white (see Compl. ¶¶ 61-62), (4) Miller stated in her report that Marin City had a "distinct marketability which differs from the surrounding areas," which comment plaintiffs describe as "coded in race" (see Compl. ¶ 55), (5) Miller's estimated market value of the Pacheco Street House was nearly $500,000 less than the value of the house as estimated by two other appraisers less than one year prior to and approximately three weeks after Miller's appraisal, respectively (see Compl. ¶¶ 45, 47, 53, 72-74),[8] and (6) Miller's above-referenced appraisal methods "deviated from [the] recognized methods and techniques of real estate appraisal" provided for in the Uniform Standards of Professional Appraisal Practice ("USPAP") (see Compl. ¶¶ 35, 64).[9]

The Court finds the above-referenced allegations, construed in the light most favorable to plaintiffs, see NL Indus., 792 F.2d at 898, suffice to make a plausible

---

[7] According to a study conducted by the Federal Home Loan Mortgage Corporation, appraisers tend to choose comps "located substantially closer to the subject property if [the subject property is] located in a Black or Latino census tract than if it [is] located in a white census tract." (See Compl. ¶¶ 26-28 (citing Freddie Mac, Racial and Ethnic Valuation Gaps in Home Purchase Appraisals, September 20, 2021, available at http://www.freddiemac.com/research/insight/20210920_home_appraisals.page (last visited Nov. 17, 2021)).)

[8] Plaintiffs further allege that, in the three weeks between Miller's appraisal and the subsequent appraisal, "nothing about the Pacheco Street House or the local real estate market changed in any material way." (See Compl. ¶ 75.)

[9] USPAP provides "ethical and performance requirements for professional appraisers" and a "gauge" by which appraisal management companies, borrowers, and lenders can "measure the quality of an appraiser's analysis and [the] reliability of their conclusions." (See Compl. ¶ 35.)

showing of race as a "motivating factor" in Miller's appraisal, see Ave. 6E, 818 F.3d at 505-06 (noting evidence of discriminatory intent may include "events leading up to the challenged decision . . . [,] defendant's departure from normal procedures," or use of "code words" reflecting racial "stereotypes" or "animus"); Earl v. Nielsen Media Res. Inc., 658 F.3d 1108, 1117 (9th Cir. 2011) (noting "deviation from established policy or practice" may be evidence of pretext for unlawful discrimination); Hanson v. Veterans Admin., 800 F.2d 1381, 1387-88 (5th Cir. 1986) (considering, on issue of discriminatory intent, parties' respective expert testimony regarding history of discriminatory appraisal practices and "reasonable[ness]" of defendant's appraisal, including downward adjustments to values of comps, "racial connotations" of "phrases" used in report, and degree of "conform[ity]" to "established . . . method[s] of appraisal").  Although the Miller Defendants contend the above-referenced allegations could also "be explained by non-discriminatory factors" (see Mot. at 9:11-13), "[i]f there are two alternative explanations, one advanced by defendant[s] and one advanced by plaintiff[s], both of which are plausible, plaintiff[s'] complaint survives a motion to dismiss under Rule 12(b)(6)," see Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Accordingly, plaintiffs having pleaded sufficient facts to support a finding of disparate treatment.[10]

**C.    Aggrieved Person**

An "aggrieved person" includes "any person who . . . claims to have been injured by a discriminatory housing practice."  See 42 U.S.C. § 3602(i).

The Miller Defendants contend FHANC is not an "aggrieved person" within the meaning of the FHA.  (See Reply at 4:22-26.)  Plaintiffs allege, however, that as a result of the Miller Defendants' challenged conduct, "FHANC began an investigation into the appraisal industry and appraisal practices in Marin County," thereby diverting FHANC's

---

[10] In light of this finding, the Court does not address herein plaintiffs' alternative theory that "the methods of valuation used by Miller had a disparate impact on African American homeowners or home purchasers."  (See Compl. ¶ 66.)

United States District Court
Northern District of California

United States District Court
Northern District of California

resources, "including staff time and financial resources, from other investigations and activities" in order to "work[] with the media and local community to counteract the effects of discriminatory appraisal practices by developing new educational resources and educating residents about their fair housing rights."  (See Compl. ¶ 78.)  Plaintiffs further allege that such conduct "frustrate[d] FHANC's mission of promoting equal opportunity and equity in housing."  (See Compl. ¶ 79.)  Such allegations suffice to show FHANC is an aggrieved person for purposes of the FHA.  See Fair Hous. of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002) (noting organization may be "aggrieved" if a discriminatory practice results in a "diversion of its resources [or] frustration of its mission"); Smith v. Pac. Props. & Dev. Corp., 358 F.3d 1097, 1105-06 (9th Cir. 2004) (finding complaint sufficiently pleaded standing, based on allegations that fair housing organization suffered frustration of mission and "divert[ed] its scarce resources from other efforts" to "monitor [defendant's] violations and educate the public regarding the discrimination at issue" (internal quotation and citation omitted)); Project Sentinel v. Komar, Case No. 1:19-cv-00708-DAD-EPG, 2021 WL 1346025, at *8-9 (E.D. Cal. Apr. 12, 2021) (finding complaint sufficiently pleaded standing, based on allegations that non-profit organization "expended staff time and resources" to "investigate[] . . . defendants' illegal activities" and "provide[] education and outreach to affected communities to counteract the discrimination," and that challenged conduct "frustrat[ed] [its] mission").

### D.    Discriminatory Housing Practice

A "discriminatory housing practice" is "an act that is unlawful under [§§] 3604, 3605, 3606, or 3617" of the FHA.  See id. § 3602(f).  Here, plaintiffs' FHA claim is brought under §§ 3604(a) and (c), 3605, and 3617.  The Court addresses each such section in turn.

#### 1.    Section 3604(a) and (c)

Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ."  See 42 U.S.C.

§ 3604(a).

Section 3604(c) makes it unlawful "[t]o make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race . . . ." See id. § 3604(c).

The Miller Defendants contend plaintiffs have not stated a claim under either § 3604(a) or (c) because the Austins' refinancing involved neither the sale nor rental of the Pacheco Street House, nor did it make a dwelling "unavailable" to the Austins. As set forth below, the Court agrees.

Both the plain language of § 3604 and related regulations promulgated by the Department of Housing and Urban Development ("HUD") indicate § 3604 applies only to sale or rental transactions, or to transactions that have an effect of making housing "unavailable" to a plaintiff, see 42 U.S.C. § 3604; 24 C.F.R. § 100.70(a) (interpreting § 3604(a) as applying to "word[s] or conduct" that "restrict or attempt to restrict the choices of a person . . . in connection with seeking, negotiating for, buying[,] or renting a dwelling")), whereas § 3605 covers other "residential real estate-related transactions," see 42 U.S.C. § 3605, such as appraisals conducted in connection with the "making or purchasing of loans or providing other financial assistance . . . [f]or purchasing, constructing, improving, repairing or maintaining a dwelling" already owned, see 24 C.F.R. § 100.115.[11]

Indeed, numerous courts, including the Ninth Circuit, have held that where, as here, the allegedly discriminatory conduct occurs in connection with the refinancing or extension of financing for the purpose of maintaining a home the plaintiff already owns (see Compl. ¶ 46), § 3605, rather than § 3604, is "the more appropriate vehicle" for the FHA claim, see Gibson v. Household Int'l, Inc., 151 Fed. App'x 529, 531 (9th Cir. 2005) (holding district court did not err in dismissing § 3604 claim appropriately brought under

---

[11] Courts "ordinarily defer to [HUD's] reasonable statutory interpretation" of the FHA. See Meyer v. Holley, 537 U.S. 280, 287 (2003).

United States District Court
Northern District of California

§ 3605; noting plaintiff cited "no authority that a § 3604 claim may proceed in the case of a non-purchase money loan"); see also Coche v. United Wholesale Mortg. LLC, Case No. SACV 21-00372-CJC (JDEx), 2021 WL 4815027, at *3 (C.D. Cal. June 3, 2021) (holding § 3604 "does not apply to refinance transactions"); Eva v. Midwest Nat'l Mort. Bank, Inc., 143 F. Supp. 2d 862, 886 (N.D. Ohio 2001) (noting "§ 3604 relates to acquiring a home, while § 3605 applies to the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired"); Laufman v. Oakley Bldg. & Loan Co., 408 F. Supp. 489, 491, 493 (S.D. Ohio 1976) (noting § 3604 applies to "sale or rental" transactions, whereas § 3605 applies to "transactions involving extensions of financial assistance"); Thomas v. First Fed. Sav. Bank of Ind., 653 F. Supp. 1330, 1337 (N.D. Ind. 1987) (finding § 3604 inapplicable where "allegations concern[ed] the availability of additional financing, . . . not the availability of housing").

Although a discriminatory appraisal may "make unavailable or deny" a dwelling to a member of a particular race, see Hanson, 800 F.2d at 1386 (finding § 3604(a) applicable where discriminatory appraisal prevented prospective homebuyer from purchasing home); Southend Neighborhood Improvement Assoc. v. County of St. Clair, 743 F.2d 1207, 1210 (7th Cir. 1984) (noting "[c]ourts have applied [§ 3604] to actions having a direct impact on the ability of potential homebuyers or renters to locate in a particular area and to indirectly related actions arising from efforts to secure housing"), here, as the Miller Defendants point out, there is no allegation that any dwelling was made "unavailable" to the Austins, who "owned the [Pacheco Street House both] before and after the refinance transaction" (see Reply at 5:7-8); see also Southend, 743 F.2d at 1210 (holding, where plaintiffs were not "hindered in an effort to acquire a dwelling," discriminatory conduct "did not affect[] the availability of housing in a manner implicating [§] 3604(a)"; noting § 3604(a) "is designed to ensure . . . no one is denied the right to live where they choose for discriminatory reasons, but it does not protect intangible interests in . . . already-owned property"); Comm. Concerning Cmty. Improvement v. City of Modesto, Case No. 1:04-cv-6121 AWI DLB, 2006 WL 3834171, at *8 (E.D. Cal. Dec. 29,

2006) (finding § 3604(a) "d[id] not protect [p]laintiffs against a decrease in the value of their homes" where such decrease "d[id] not make the dwellings unavailable to them").

Accordingly, to the extent plaintiffs rely on § 3604, their FHA claim is subject to dismissal.

### 2.      Section 3605

Section 3605 makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race . . . ."  See 42 U.S.C. § 3605(a).  As noted, a "residential real estate-related transaction" includes the "appraising of residential real property," see id. § 3605(b)(2), "in connection with the . . . financing or refinancing of a dwelling," see 24 C.F.R. § 100.135(b).

Here, for purposes of § 3605, the appraisal at issue is a "residential real estate-related transaction," see 42 U.S.C. § 3605(a), and plaintiffs allege Miller "knew the [Austins] were African American when she conducted the appraisal inspection on January 29, 2020," because Paul Austin was present and photos of the Austins' family were "conspicuous[ly]" on display (see Compl. ¶¶ 48-51).  Plaintiffs further allege that "Miller's valuation was influenced by the [Austins'] race . . . , or the racial demographics of Marin City, or both" (see Compl. ¶ 65) and, as set forth in detail earlier herein, have pleaded facts sufficient to support that allegation.

Accordingly, to the extent plaintiffs rely on § 3605, their FHA claim is not subject to dismissal.

### 3.      Section 3617

Section 3617 makes it unlawful "to . . . interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [§§ 3604 or 3605] of [the FHA]."  See 42 U.S.C.§ 3617.  The phrase "'interfere with' has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws."  See United States v. City of Hayward, 36 F.3d 832, 835 (9th Cir.

1   1994) (internal quotation and citation omitted).  Thus, to state a claim under § 3617, "a

2   plaintiff must only allege: (1) discrimination (2) because of a protected class."  See Ohana

3   v. Marriott, Case No. 2:14-cv-04274-SVW-MRW, 2016 WL 11760169, at *9 (C.D. Cal.

4   Nov. 8, 2016) (citing Edwards v. Marin Park, Inc., 356 F.3d 1058, 1063 (9th Cir. 2004)).

5       As set forth above, plaintiffs have sufficiently alleged that the Miller Defendants

6   interfered with their rights under § 3605, specifically, by discriminating against the Austins

7   on the basis of their race in appraising the Pacheco Street House.  (See Compl. ¶¶ 65,

8   68, 77); see also United States v. Am. Inst. of Real Estate Appraisers of Nat'l Assoc. of

9   Realtors, 442 F. Supp. 1072, 1079 (N.D. Ill. 1977) (holding "treat[ing] race . . . as a

10  negative factor in determining the value of dwellings . . . may . . . 'interfere' with persons

11  in the exercise and enjoyment of rights guaranteed by" § 3605).

12      Accordingly, to the extent plaintiffs rely on § 3617, their FHA claim is not subject to

13  dismissal.

### E.      Conclusion: First Claim for Relief

15      In sum, plaintiffs' First Claim for Relief is subject to dismissal to the extent it is

16  brought under § 3604(a) and (c), but not to the extent it is brought under §§ 3605 and

17  3617.

### II.     Second Claim for Relief (FEHA)

19      In the Second Claim for Relief, plaintiffs allege the Miller Defendants violated

20  §§ 12955(c), (d), and (i), 12955.7, and 12955.8 of FEHA.

21      "FEHA in the housing area is . . . intended to conform to the general requirements

22  of federal law in the area and may provide greater protection against discrimination."

23  Brown v. Smith, 55 Cal. App. 4th 767, 780 (1997).  "In other words, the FHA provides a

24  minimum level of protection that FEHA may exceed."  See Auburn Woods I Homeowners

25  Ass'n v. Fair Emp. & Hous. Comm'n, 121 Cal. App. 4th 1578, 1591 (2004); see also Cal

26  Gov't Code § 12955.6 (providing FEHA shall not "be construed to afford to the classes

27  protected [thereunder] fewer rights or remedies than the [FHA] . . . and its implementing

28  regulations").  Thus, provisions of FEHA that "protect substantially the same rights as"

United States District Court
Northern District of California

13

their corresponding FHA provisions "are subject to the same analysis." See Cabrera, 977 F. Supp. 2d at 975 (citing Walker v. City of Lakewood, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001)).

Here, the Court finds §§ 12955(i)[12] and 12955.7[13] of FEHA protect substantially the same rights as §§ 3605 and 3617 of the FHA, respectively. See House v. Cal State Mortg. Co., Case No. CV-F-08-1880 OWW/GSA, 2009 WL 2031775, at *18-20 (E.D. Cal. July 9, 2009) (applying § 3605 case law to § 12955(i) FEHA claim); Egan v. Schmock, 93 F. Supp. 2d 1090, 1094 (N.D. Cal. 2000) (finding § 12955.7 of FEHA "mirrors the language of [§ 3617] of the FHA"). Consequently, to the extent "plaintiffs have sufficiently pled FHA claims" under §§ 3605 and 3617, "they have also sufficiently pled . . . [their] corresponding FEHA claims." See Watson v. Palm Crest Apartments, Case No. CV 07-3955 ODW (CWx), 2007 WL 9706307, at *6 (C.D. Cal. Oct. 10, 2007); see also Johnson v. Birks Props., LLC, Case No. 21-CV-01380-GPC-DEB, 2022 WL 104736, at *3 (S.D. Cal. Jan. 11, 2022) (noting, to extent "[p]laintiff has stated a claim . . . sufficient to withstand a Rule 12(b)(6) [m]otion under the FHA, she has also done so under FEHA"); Anderson v. TCAM Core Prop. Fund Operating LP, Case No. SACV 14-01932-CJC (JCGx), 2015 WL 268872, at *2 (C.D. Cal. Jan. 14, 2015) (finding, where plaintiff sufficiently pleaded FHA claim, FEHA claim based on same allegations "similarly sufficient").[14]

---

[12] Section 12955(i) of FEHA makes it unlawful "[f]or any person or other organization or entity whose business involves real estate-related transactions to discriminate against any person in making available a transaction, or in the terms and conditions of a transaction, because of race," and "[f]or any person or other entity whose business includes performing appraisals . . . of residential real property to discriminate against any person in making available those services, or in the performance of those services, because of race." See Cal. Gov't Code § 12955(i).

[13] Section 12955.7 of FEHA makes it unlawful "to coerce, intimidate, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [§] 12955." See id. § 12955.7.

[14] In light of this finding, the Court does not address herein the adequacy of

United States District Court
Northern District of California

1    Accordingly, plaintiffs' Second Claim for Relief is not subject to dismissal.

2    **III.    Third and Fourth Claims for Relief (Civil Rights Act of 1866)**

3    In the Third and Fourth Claims for Relief, plaintiffs allege the Miller Defendants

4    violated their rights under §§ 1981 and 1982, respectively, of the Civil Rights Act of

5    1866.[15]

6    Section 1981 provides that "[a]ll persons within the jurisdiction of the United States

7    shall have the same right in every State and Territory . . . to the equal benefit of all laws

8    and proceedings for the security of persons and property as is enjoyed by white citizens."

9    See 42 U.S.C. § 1981.

10    Section 1982 provides that "[a]ll citizens of the United States shall have the same

11    right, in every [s]tate and [t]erritory, as is enjoyed by white citizens thereof to inherit,

12    purchase, lease, sell, hold and convey real and personal property."  See id. § 1982.

13    The Miller Defendants contend §§ 1981 and 1982 "do[] not apply to the facts of

14    this case," for the asserted reason that the "only two" § 1981 and § 1982 cases that

15    "relate[] to appraisers," namely, Latimore v. Citibank, F.S.B., 979 F. Supp. 662 (N.D Ill.

16    1997) and Mathis v. United Homes, LLC, 607 F. Supp. 2d 441 (E.D.N.Y. 2009), are

17    "distinguishable."  (See Mot. at 15:6-23, 16:2-6.)  As set forth below, the Court is

18    unpersuaded.

19    At the outset, the Court notes that, contrary to the Miller Defendants' argument,

20    Latimore and Mathis are not the "only two" § 1981 and § 1982 cases that "relate[] to

21    appraisers" (see Mot. at 15:6-7, 16:2-3); plaintiffs and the Miller Defendants themselves

22    have both cited other cases fitting such description, see Steptoe v. Sav. of Am., 800 F.

23    Supp. 1542 (N.D. Ohio 1992); Thomas v. First Sav. Bank of Ind., 653 F. Supp. 1330

24    (N.D. Ind. 1987).

25    Moreover, the distinctions identified by the Miller Defendants do not support

26    _____

27    plaintiffs' Second Claim for Relief to the extent it is based on other provisions of FEHA.

28    [15] The Third Claim for Relief is brought only on behalf of the Austins.

United States District Court
Northern District of California

1  dismissal of plaintiffs' claims.  First, although <u>Latimore</u> involved "the denial of a loan

2  application," whereas the Austins' "loan application was approved and they were able to

3  refinance the property" (<u>see</u> Mot. at 13:9-16), the Miller Defendants have cited no

4  authority, nor is the Court aware of any, supporting the proposition that the denial of a

5  loan is a prerequisite to asserting a § 1981 or § 1982 claim based on a discriminatory

6  appraisal, and, indeed, of the cases cited, the one district court to have been presented

7  with the issue has held to the contrary, <u>see</u> <u>Steptoe</u>, 800 F. Supp. at 1546-47 (rejecting

8  argument that denial of loan is required element of claim brought under FHA, § 1981, or

9  § 1982; noting "[a]n appraisal sufficient to support a loan request is a necessary condition

10  precedent . . . [for] a home loan," and "[a] potential defendant in an FHA case could

11  always insulate itself from liability . . . by purposefully lowballing an appraisal and then

12  doing nothing more").  Second, although <u>Mathis</u> involved the overvaluation of property,

13  whereas the instant case involves an alleged undervaluation of the Pacheco Street

14  House (<u>see</u> Mot. at 15:20-22), the Court agrees with plaintiffs that "[w]hether a defendant

15  overvalues or undervalues Black-owned property is a difference without distinction" (<u>see</u>

16  Opp. at 22:16-28); <u>see also</u> <u>Steptoe</u>, 800 F. Supp. at 1546-47 (finding, where appraiser

17  allegedly undervalued subject property, plaintiffs established prima facie case under

18  §§ 1981 and 1982).

19      The Miller Defendants next contend plaintiffs' § 1981 and 1982 claims are subject

20  to dismissal for the reason that "[p]laintiffs do not allege . . . Miller interfered with [their]

21  right to equal treatment or to hold real property at all, let alone for reasons related to

22  race."  (<u>See</u> Reply at 11:14-16.)  As discussed in detail above, however, plaintiffs have

23  sufficiently alleged Miller treated them differently on the basis of their race in conducting

24  the subject appraisal (<u>see</u> Compl. ¶¶ 48-62), and, with respect to interference with the

25  right to hold property, "the [Supreme] Court has broadly construed th[e] language [of

26  § 1982] to protect not merely the enforceability of property interests acquired by black

27  citizens but also their right to acquire and use property on an equal basis with white

28  citizens," <u>see</u> <u>City of Memphis v. Greene</u>, 451 U.S. 100, 120 (1981); <u>see also</u> <u>Evans v.</u>

United States District Court
Northern District of California

United States District Court
Northern District of California

First Fed. Sav. Bank of Ind., 669 F. Supp. 915, 920 (N.D. Ind. 1987) (holding "use of one's already-owned property to obtain a loan is a protected use of that property under [§ 1982]"; noting right to "[use] the equity in one's already-owned home as collateral for a loan" is "a significant interest associated with home ownership" and "as fused into the right to 'hold' property as is the right of access to, or enjoyment of, recreational facilities associated with the property"); Ghosh v. Uniti Bank, Case No. CV 10-7412 DSF (AGRx), 2011 WL 13127590, at *2 (C.D. Cal. Jan. 27, 2011) (adopting "persuasive reasoning in Evans"; holding "§ 1982 covers refinancing of real property" already in plaintiff's possession).

Accordingly, plaintiffs' Third and Fourth Claims for Relief are not subject to dismissal.

**IV.      Fifth Claim for Relief (Unruh Act)**

In the Fifth Claim for Relief, brought on behalf of the Austins, plaintiffs allege that the Miller Defendants violated California's Unruh Act.

The Unruh Civil affords broad protection against discrimination, providing that "[a]ll persons," regardless of race, are entitled to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." See Cal. Civ. Code § 51.

The Miller Defendants contend plaintiffs' Unruh Act claim is subject to dismissal for the asserted reason that "[n]one of the decisions citing the Unruh Act involve a claim against an appraiser." (See Mot. at 16:13-16.)  The question thus presented is whether appraisers are deemed "business establishments" under the statute.

"The Unruh Act expand[ed] the reach of [a] prior public accommodations statute from common carriers and places of accommodation and recreation, e.g., railroads, hotels, restaurants, theaters, and the like, to include all business establishments of every kind whatsoever."  See Isbister v. Boys' Club of Santa Cruz, Inc., 40 Cal. 3d 72, 78 (1985) (internal quotation, citation, alteration, and emphasis omitted).  "By its use of the emphatic words 'all' and 'of every kind whatsoever,' the Legislature intended that the

United States District Court
Northern District of California

phrase 'business establishments' be interpreted in the broadest sense reasonably possible."  Id. (internal quotation and citation omitted).

Although courts have avoided setting forth a rigid test for determining whether an entity is a "business establishment," the California Supreme Court has explained that the definition of "business," within the meaning of the Unruh Act, "embraces everything about which one can be employed, and . . . is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain,'" and that the term "establishment" includes "not only a fixed location," but also "a permanent commercial force or organization or a permanent settled position (as in life or business)."  See Burks v. Poppy Constr. Co., 57 Cal. 2d 463, 468 (1962) (citation omitted) (holding construction company is a "business establishment" for purposes of Unruh Act).  The California Supreme Court has also noted that the Unruh Act "firmly established the right of all persons to nondiscriminatory treatment by establishments that engage in business transactions with the public," see Warfield v. Peninsula Golf & Country Club, 10 Cal. 4th 594, 618 (1995), and "aims to eliminate arbitrary discrimination in the provision of all business services to all persons," see Harris v. Cap. Growth Invs. XIV, 52 Cal. 3d 1142, 1174 (1991).

Given the above authority, the Court finds appraisers, such as the Miller Defendants,[16] fall within the Unruh Act's broad definition of a business establishment. The Court further finds the Unruh Act, like FEHA, "protect[s] substantially the same rights as the FHA provisions at issue" and, thus, is "subject to the same analysis" as plaintiffs' FHA claim.  See Cabrera, 977 F. Supp. 2d at 975.  Here, as discussed above, plaintiffs have sufficiently pleaded a claim under the FHA; consequently, they also have sufficiently pleaded a claim under the Unruh Act.  See Watson, 2007 WL 9706307, at *7 (finding

---

[16] Liability under the Unruh Act "extends beyond the business establishment itself to the business establishment's employees responsible for the discriminatory conduct." See N. Coast Women's Care Med. Grp., Inc. v. Superior Court, 44 Cal. 4th 1145, 1154 (2008).

1   Unruh Act claim adequately pleaded where plaintiffs adequately pleaded FHA disparate

2   treatment claim); <u>Patton v. Hanassab</u>, Case No. 14-cv-1489 AJB (WVG), 2015 WL

3   589460, at *4-5 (S.D. Cal. Feb. 12, 2015) (same); <u>Anderson</u>, 2015 WL 268872, at *2

4   (finding, where plaintiff sufficiently pleaded FHA claim, Unruh Act claim premised on

5   same allegations "similarly sufficient").

6            Accordingly, the Austins' Fifth Claim for Relief is not subject to dismissal.

7   **V.       Sixth Claim for Relief (UCL)**

8            In the Sixth Claim for Relief, plaintiffs allege the Miller Defendants violated

9   California's UCL.

10           The UCL "prohibits unfair competition by means of any unlawful, unfair, or

11  fraudulent business practice."  <u>See</u> <u>Birdsong v. Apple, Inc.</u>, 590 F.3d 955, 959 (9th Cir.

12  2009) (citing Cal. Bus. & Prof. Code §§ 17200-17210).  "Each prong of the UCL is a

13  separate and distinct theory of liability."  <u>Id.</u>

14           The Miller Defendants contend plaintiffs have not pleaded their UCL claim with the

15  requisite specificity.  The Court agrees.  A UCL claimant must identify the "particular

16  section of the statutory scheme which was violated" and "state with reasonable

17  particularity the facts supporting the statutory elements of the violation."  <u>See</u> <u>Khoury v.</u>

18  <u>Maly's of Calif., Inc.</u>, 14 Cal. App. 4th 612, 619 (1993).  Here, although plaintiffs allege, in

19  conclusory fashion, that defendants "have engaged in unlawful discrimination in the

20  operation of their business" (<u>see</u> Compl. ¶ 100) and appear to suggest in their opposition

21  that their UCL claim is based on their FHA, FEHA, and Unruh Act claims (<u>see</u> Opp. at

22  23:11-13), any such predicate is not made clear from the allegations in support of the

23  Sixth Claim for Relief, which merely "incorporates by reference" the entirety of the factual

24  allegations made in the complaint (<u>see</u> Compl. ¶ 99).

25           Accordingly, plaintiffs' Sixth Claim for Relief is subject to dismissal.

26  **VI.      Seventh Claim for Relief (Negligent Misrepresentation)**

27           In the Seventh Claim for Relief, brought on behalf of the Austins, plaintiffs allege

28  the Miller Defendants negligently misrepresented they "were providing an unbiased

United States District Court
Northern District of California

appraisal of the Pacheco Street House." (See Compl. ¶ 103.)

To state a claim for negligent misrepresentation, a plaintiff must allege "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." See Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC, 158 Cal. App. 4th 226, 243 (2007). Additionally, a plaintiff must "allege facts establishing that [the] defendant[] owed him a duty to communicate accurate information." See Friedman v. Merck & Co., 107 Cal. App. 4th 454, 477 (2003).

Here, the Miller Defendants contend plaintiffs "have not alleged that they relied upon [Miller's] appraisal in any detrimental way." (See Mot. at 18:21-19:12.) The Court agrees that plaintiffs' facts are insufficient to support their conclusory allegation that the Austins "reasonably relied on defendants' representations" (see Compl. ¶ 105); indeed, plaintiffs allege the Austins were "[s]hocked" by Miller's low valuation and obtained another appraisal, on which they were able to refinance their mortgage (see Compl. ¶¶ 68, 77).[17]

Accordingly, the Austins' Seventh Claim for Relief is subject to dismissal.

## CONCLUSION

For the reasons stated above, the Miller Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1. With respect to plaintiffs' First Claim for Relief (FHA), the motion is (a) GRANTED to the extent said claim is based on § 3604, and (b) DENIED to the extent said claim is based on §§ 3605 and 3617.

2. With respect to plaintiffs' Second (FEHA), Third (§ 1981), Fourth (§ 1982), and Fifth (Unruh Act) Claims for Relief, the motion is hereby DENIED.

---

[17] In light of this finding, the Court does not address herein the Miller Defendant's additional argument that they did not owe the Austins a duty of care.

United States District Court
Northern District of California

1    3. With respect to plaintiffs' Sixth (UCL) and Seventh (Negligent

2  Misrepresentation) Claims for Relief, the motion is hereby GRANTED.

3    4. If plaintiffs wish to amend their complaint to cure the above-noted deficiencies,

4  they shall file their First Amended Complaint no later than May 6, 2022.

6    **IT IS SO ORDERED.**

8  Dated: April 13, 2022

MAXINE M. CHESNEY
United States District Judge